RECEIVED

2020 DEC 16 AM 8: 29

*illegible* COULD
*illegible* DISTRICT COU*illegible*
*illegible* OF TN MEMPHIS

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WESTERN DISTRICT OF TENNESSEE WESTERN DIVISION

M. LA-TROY
ALEXANDRIA-WILLIAMS,

      *Petitioners,*

  v.

MARK GOINS, official capacity As
Coordinator of Tennessee Elections
MARY MANCINI, official capacity As
Chairwoman of the Tennessee
Democratic Party
LINDA PHILLIPS, SHELBY
COUNTY ELECTION
COMMISSIONER,

      *Respon-*
*dents.*

No. 2:20-cv-02715

### Emergency Petition For Temporary Restraining Order And Incorporated Memorandum Of Law

Comes now the Petitioner, M. LaTroy Alexandria-Williams, and petitions this court for a temporary restraining order barring In support of this motion Plaintiff asserts as follow.

1. In 2010, the Shelby County Democratic Party, Karen Camper, Joe Towns, Regina Morrison Newman, Minerva Johnican, Corey Maclen and Lexie Carter filed a Petition For Contempt And For Additional Emergency Temporary Restraining Order And Permanent Injunction against M. LaTroy Williams, Charlotte Draper, Memphis Democratic Party Of TN, Inc., Shelby County Democratic Club (SCDC), Bishop Everrett-Banks, R. Porter, Bobby Carter and Sherrie Miller Johnson. (See Exhibit 1: Petition - Case No. CH-10-1354, Chancery Court Thirteenth Judicial District Memphis).

2. In that case the Petitioners were seeking an injunction to prevent the Defendants from using sample ballots that were captioned "Memphis Democratic Party Of TN, Inc" and "Shelby County Democratic Club." (Exhibit 1).

3. After a hearing the case was ultimately dismissed with prejudice in September 2010, as the court determined that M. Latroy Williams owned the trademarks for "Memphis Democratic Part Of TN, Inc" and "Shelby County Democratic Club" and that Mr. Williams was within his first amendment rights to endorse whoever he wished. (See Exhibit 2: Order Of Dismissal - Case No. CH-10-1354, Chancery Court Thirteenth Judicial District Memphis)

4. Pursuant to that same case, the court admonished the petitioners for committing perjury and for destroying Mr. Williams campaign signs and said criminal charges would be brought against them if they did those things again. (See Exhibit 3: Affidavit of M. LaTroy Williams).

5. In the same case the court declared that Mr. Williams was the legal owner organizations known as the Shelby County Democratic Party, The Shelby County Democratic Club, the Memphis Democratic Party Of TN, Inc. and the Greater Memphis Democratic Club, Inc. (Exhibit 3).

6. The Shelby County Democratic Club has existed in Memphis for 72 years with notable members including Ben Hooks, Maxine Smith, Amacio Walker, Blair T. Hunt, O'dell Horton, D'Army Bailey and Russell Sugarman.

7. For 10 years the Shelby County Democratic Club has been able to put out its sample ballot without restraint.

8. As a gesture of goodwill, Mr. Williams and his organizations agreed to put "Not affiliated with the Democratic Party" on their sample ballot for the August 6th 2020 election, but they have still been harassed by the respondents. (Exhibit 3).

2

9. As a further gesture of goodwill, Mr. Williams allowed the Grant brothers to take over use of the Greater Memphis Democratic Club, Inc. (Exhibit 3).

10. In 2014, Cohen For Congress Committee filed a Petition For Temporary Injunction against M. LaTroy Williams,"National Democratic Party Of The USA, Inc., Shelby County Democratic Club, Shelby County Democratic Party, Inc. and Memphis Democratic Club based on the same arguments from the case dismissed with prejudice in 2010. (See Exhibit 4: Petition - Case No. CT-003348-14, Circuit Court Thirteenth Judicial District Memphis).

11. At issue was sample ballots and TV ads produced by the Defendants on behalf of Rickey Wilkerson, a African American running in the Democratic primary against Congressman Steve Cohen. (Exhibit 4).

12. Cohen For Congress was granted an injunction on August 25, 2014, but that injunction was dissolved "Upon request from Defendants and for good cause." (See Exhibit 5: Order To Dissolve Temporary Injunction - Case No. CT-003348-14, Circuit Court Thirteenth Judicial District Memphis).

13. After a hearing on January 27, 2017, Cohen For Congress Committee voluntarily dismissed their case. (See Exhibit 6: Order Of Dismissal - Case No. CT-003348-14, Circuit Court Thirteenth Judicial District Memphis).

14. Most recently the Shelby County Democratic Party and Marek For Memphis have filed against Greg Grant, Individually &d/b/a/ Greater Memphis Democratic Club, Inc., and M. LaTroy Williams, Individually &d/b/a Shelby County Democratic Club. (See Exhibit 4: Petition - Case No. CT-003348-14, Circuit Court Thirteenth Judicial District Memphis).

15. That Petition is seeking to rev-litigate the same issues that have already been decided in favor of the M. LaTroy Williams and his organizations.

3

16. As paragraph in this most recent action states "Petition the Shelby County Democratic Party, chartered by the Tennessee Democratic Party, is the lawful representative body of the Tennessee Democratic Party in Shelby County", one of the Petitioners in that case is under the supervision of the Defendants in this current action.

17. The Petitioner, Mr. Williams is African American and has significant civic and political influence in the African American community in Memphis Tennessee. (Exhibit 3)

18. Marek For Memphis is in a race for the Mayor Of Memphis which is an open race where no party affiliation is required.

19. Marek For Memphis was concerned because a ballot put out by Greg Grant via "Greater Memphis Democratic Club" mentioned his competitors but not him.

20. Mr. Williams sample ballot had Mr. Marek listed as a candidate and also included the "Not affiliated with the Democratic Party" disclaimer. (Exhibit 7: Sample ballot).

21. John Marek, on behalf of Cohen for Congress, filed a complaint with the Federal Election Commission (FEC) in 2014, falsely claiming that Mr. Alexandria-Williams had "peddled misleading ballots in Shelby County" and had implied "endorsement of Ricky Wilkins by the Democratic National Committee and President Barack Obama" and that use of "National Democratic Party of the U.S.A." in a TV ad endorsing Ricky Wilkins was somehow improper. (See Exhibit 8: FEC Complaint)

22. The Petitioner denied the complaint by Mr. Marek as fraudulent, frivolous and motivated by racism. In particular Petition wrote the following the FEC paralegal Kim Collins:

4

Dear Ms. Collins:

Please be advise,we denied all allegation, that has been condone by predator John Marek is false,as I said all allegation by Mr. Marek Is false and unfounded. The Shelby County Democratic Club is Charter(# 638459) and The National Democratic Party of The USA Is charted(#-640511) and register. The Democratic Coalition Is Charted (#67622483). The Memphis Democratic Club, The Democratic Party of Tennessee and The Shelby County Democratic Party INC. are also register and charted.

Over The Last Seven years Congress Steve Cohen .John Marek and his Surrogate have condone an ail out malice attack against me personal (M.La-Troy Williams). The Shelby County Democratic Club, The National Democratic Party of The USA and the Democratic Coalition.To destroy my reputation .our organization and my companies. This frivolous scheme, slander, abuse of power .racism .harassment.hate crime, and subversive behavior, has met the threshold of a high crimes and misdemeanors.  Mr.  Cohen frivolous in l unction.  was a smoke screen to suppress the Black voter, and it did Just that, which caused 6-county-wide seats, and eight Judgeship to be turn over to the-republican party.  Now he is saying to stop M.La-Troy Williams from publishing free speech, his attorneys ask the judge In Court, to keep the litigation so we can stop ML. La-Troy Williams from endorsing, a Black-woman, the honorable judge said he cannot stop free speech base upon someone anticipation., and that Mr. Williams can endorse anyone he want to. he said he was very happy when he saw his name and picture on the ballots. Mr.Cohen was endorsed on the ballots In 2012 and was also endorsed ON THE MDC IN 2010. AND PAYED A LOTS OF MONEY F0R THAT

5

ENDORSEMENT,TO STOP THE MDC FROM ENDORSING FORMER CITY MAYOR. WILLIE W. HERENTON (PER GREGG GRANT). And thank our chairman bishop M.F. BANKS. (see ballot # A1-2B) In 2010 he used President Obama, Maxine Smith and endorsed an all white candidates and left most of the black candidates off his ballot. I will mail the ballots upon request. Also see ballot. ENDORSE COHEN Democratic Coalition 2012) SEE-A1) and the National Democratic Party of the U.S.A. endorse Steve Cohen SEE(2B). t am sending you copies of the dismissed case SEPT 2010, also I am sending you copies of September 25; 2014 which WAS DISMISSED. This prove these frivolous injunction, is deceitful racist and hate crime attempt to .destroy African American leadership, sincerely Marion. LaTroy Williams. P.S. I will also be filing a complaint soon.

(Exhibit 9: Email to Kim Collins, FEC paralegal, October 4, 2014)

23. The Petitioner, through his attorney Paul Robinson, also vigorously fought against the complaint on equal protection and first amendment grounds pointing out that there were multiple sample ballots being distributed in and around Memphis, and pointing out through case law that the actions taken by the Petitioner were protected by the First Amendment. (Exhibit 10: Response From LaTroy Williams 12/18/2015)

24. The FEC ultimately concluded in 2018 (four years later) that there was nothing wrong with Petitioner's printed advertisements except that the disclaimer on them was not in a printed box. The disclaimers had all of the required information to comply with federal law and were only missing the printed box, which is something that was missing from the sample ballots Steve Cohen was using. [1]

---

[1] Specifically the Second General Counsel's Report on this matter stated: *The posters and yard signs included the statement, "Paid for by the Committee to Elect Democrats, M.F. Banks, Chairman;" this*

6

(See Exhibit 11: FEC Second General Counsel's Report.)

25. The FEC also looked into the issue of the reporting requirements under 52 § 30104(c)(1) which states:

> (1) Every person (other than a political committee) who makes independent expenditures in an aggregate amount or value in excess of $250 during a calendar year shall file a statement containing the information required under subsection (b)(3)(A) for all contributions received by such person.

The FEC decided not to take action on this matter as the spending in question was determined to be *de minimus*, however the facts in the case show that the Petitioner was acting within the law on that matter as well. The expenditures in question were controlled and authorized by a political committee which voted on who to put on the sample ballots. The FEC acknowledged this but mistakenly put emphasis on who controlled the bank account without citing to any legal authority to support the idea that control of a bank account that paid for an independent expenditure that was expressly authorized by a political committee somehow nullified the connection of that expenditure to the political committee.

26. A follow up letter from FEC attorney Camilla Jackson Jones to Petitioner's attorney stated that the commission was closing the file and that petitioner was admonished to make sure all disclaimer and reporting requirements were followed. (See Exhibit 12: FEC letter February 13, 2018.)

27. Petitioner followed all reporting requirements

---

*statement was not contained in a printed box set apart from the other contents of the communication.*

7

28. Petitioner Williams is now, along with Greg Grant, the subject of a criminal contempt hearing on October 2 for something he had no knowledge or control over and was done against his express written permission.

29. In a previous proceeding, Respondents stated in open Court that they were concerned over the power of the Petitioner to use his influence in elections stating "Your Honor, you don't know who LaTroy Williams is. He can make anybody win." (Exhibit 3)

30. Respondents also stated in other proceedings that they would drop a lawsuit against Petitioner Williams if he would not endorse Charlotte. (Exhibit 3)

31. Respondents also stated in other proceedings that if the court did not stop petitioner Williams that the Democratic Party and candidate Steve Cohen would have to spend too much money to defeat him. (Exhibit 3)

32. Petitioner filed a pro se motion in this matter for a Temporary Restraining Order blocking criminal contempt prosecution in a related matter in Tennessee state court.

33. This Court denied that motion on the grounds the Petitioner is currently represented by counsel.

34. Petitioner's counsel wrote an email dated November 2, 2020 to him stating that he would file a motion to withdraw on this matter but has so far failed to do so. (See Exhibit 4 - Email from Paul Robinson).

35. Prior to that, attorney Robinson had promised to file the motion for a temporary restraining order by October 6th but failed to do that as well.

36. Attorney Robinson has now filed a motion to withdraw with this Court.

Wherefore Petitioners ask this Honorable Court for an emergency injunction against the criminal contempt proceedings against Mr. Williams.

## Memorandum Of Law In Support

### Charges Against Petitioner Are Barred By Res Judicata And Collateral Estoppel

When applying res judicata to a state law cause of action, the Sixth Circuit uses the res judicata doctrine of the forum state.[2] *Ohio ex rel. Boggs v. City of Cleveland*, 655 F. 3d 516, 519 (6th Circuit 2011) Res judicata or claim preclusion bars a subsequent suit between two parties and their privies on the same claim with respect to all issue raised or that could have been raised in the previous suit. *Jackson v. Smith*, 387 SW 3d 486, 491 (Tenn. 2012); *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn.2009). The burden of proof for res judicata is on the party raising it. *United States Fidelity & G. Co. v. Bituminous Cas. Corp.*, 371 SW 2d 801, 802 (Tenn.Ct.App.1962); *Ragsdale v. Hill*, 269 SW 2d 911, 917 (Tenn.Ct.App.1954). A defendant in Tennessee raising a res judicata defense must show "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Jackson*, 387 SW 3d at 491; *Lien v. Couch, 993 S.W.2d 53, , 56 (Tenn.Ct.App.1998)*. The res judicata defense must "clearly and unequivocally appear on the face of the complaint." *Jackson*, 387 SW 3d at 492 In fact, "the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief." *Id*; See *Ragsdale*, 269 SW 2d at 916 (holding that a demurrer asserting res judicata was improper when the petition being challenged did not mention the prior decree).

---

[2]In *Boggs*, the Sixth Circuit used Ohio state case law to evaluate res judicata.

"To prevail with a collateral estoppel claim, the party asserting it must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded." *Mullins v. State*, 294 SW 3d 529, 535 (Tenn. 2009)

The prosecution of Mr. Williams for contempt is barred by both res judicata and collateral estoppel. From the first case in 2010 to every subsequent case referenced, Mr. Williams and the Tennessee Democratic Party in some form have been opposing parties.  These cases have been resolved on the merits with the first case being dismissed with prejudice and the second being voluntarily dismissed.  The courts involved had jurisdiction over the cases.  The case was over the same issue, which is may Mr. Williams, through the organizations that he secured the legal rights for, use their name to endorse political candidates. The answer to that is a firm yes. The party Marek for Memphis, while not a party to previous actions, still is barred by the doctrine of collateral estoppel because these are the same claims that have been raised in previous litigation, and Marek for Memphis is in privity with the State Democratic Party of Tennessee which had a full and fair opportunity to litigate this matter already.

Furthermore the FEC ruling on this matter clears Mr. Alexandria-Williams of any wrong doing that is currently being alleged against him by the Respondents and anyone affiliated with them including Congressman Steve Cohen. The FEC had a chance to rule on the false allegation made by John Marek that somehow the use of "National Democratic Party Of The USA" in an endorsement was somehow false or misleading and the FEC declined to do so. Instead, all they admonished Petitioner

about with regards to advertising content was to make sure there was a "printed box" around the disclaimers which Petitioner already had on his materials giving the name and address, phone number or website of the organization doing the endorsement and on independent expenditure reporting.

**Petitioner's Use Of Sample Ballots Are Protected By The First Amendment**

In Petitioner's successful challenge to the fraudulent 2014 complaint to the FEC against him regarding sample ballots, Petitioner stated as follows:

> The court noted in *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 223, 109 S. Ct. 1013, 1020, 103 L. Ed. 2d 271, 282, 1989 U.S. LEXIS 1042, *18-19, 57 U.S.L.W. 4251 (U.S. 1989)" We have recognized repeatedly that "debate on the qualifications of candidates [is] integral to the operation of the system of government established by our Constitution." *Buckley v. Valeo*, 424 U.S. 1,14 (1976) (per curiam); see also *NAACP v. Claiborne Hardware Co.*. 458 U.S. 886, 9 i 3 (1982); *Carey v. Brown*, 447 U.S. 455, 467 (1980); *Carrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). indeed, the First Amendment "has its fullest and most urgent application" to speech uttered during a campaign for political office. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971); see also *Mills v. Alabama*, 384 U.S. 214, 218 (1966). Free discussion about candidates for public office is no less critical before a primary than before a general election. Cf. *Storer v. Brown*, 415 U.S. 724, 735 (1974); *Smith v. Allwright*. 321 U.S. 649, 666 (1944); *United States v. Classic*, 313 U.S. 299, 314 (1941).

Petitioner is being prosecuted for engaging in speech protected by the First Amendment of the United States. Those who repeatedly bring lawsuits, and now even criminal charges, against Petitioner have engaged in the same speech and are seeking to abuse

11

the power of the court system to have a monopoly on political speech in Memphis Tennessee.

**Petitioner Should Be Granted A Temporary Restraining Order Against Prosecution Related To Production And Distribution Of Sample Ballots**

The factors for a temporary restraining order (TRO) are "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Northeast Ohio Coalition for Homeless v. Blackwell*, 467 F. 3d 999, 1009 (6th Cir. 2006.

The foundational case for federal injunctions against state prosecutions is *Ex Parte Young* which allows for injunctions again state officers who "threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution". *Ex Parte Young*, 209 US 123, 123 (1908) *Ex Parte Young* was limited by the fact that federal courts will normally assume that state prosecutors will stay within constitutional grounds and there will be no irreparable harm. *Dombrowski v. Pfister*, 380 US 479, 484 (1965). If there allegations show there is "a substantial loss or impairment of freedoms of expression. . .if appellants must await the state court's disposition and ultimate review" then that "clearly show irreparable injury." *Id.* In *Dombrowski*, at issue was "threats of prosecution under color of the statutes to harass appellants and discourage them and their supporters from asserting and attempting to vindicate the constitutional rights of Negro citizens of Louisiana." *Id.* at 479. Specifically the allegations were as follows:

> Supported by affidavits and a written offer of proof, the complaint further alleges that the threats to enforce the statutes against appellants are not

12

made with any expectation of securing valid convictions, but rather are part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass appellants and discourage them and their supporters from asserting and attempting to vindicate the constitutional rights of Negro citizens of Louisiana.

The facts in this petition are almost identical to those in *Dombrowski*. Respondents have already stated in open court that they were concerned about Petitioner Alexander's ability to influence elections. There is no credible allegation that he himself violated any court order, and that court order itself is questionable. The timing of the prosecution against him for criminal court is right before one of the most highly contested elections in this nation's history. No harm would be done to the state for having to delay their questionable prosecution until after the election. But great harm may come not just to Petitioner Williams but also to the African American electorate in Memphis Tennessee who may champions of their cause muzzled at a most crucial time in history.

The elements for a TRO are because 1) the Petitioner has a strong likelihood of success on the merits because of res judicata and that the political speech he has engaged in and is being prosecuted for is protected by the first amendment. 2) the petitioner has suffered irreparable injury absent a stay because the election went forward without this issue being resolved, but there is an ongoing harm and the respondents and their allies, through abusing the court system, seek an ongoing chilling effect to stop first amendment protected political speech and to destroy the effectiveness of independent African American media organizations 3) no substantial harm will be done to other parties by the Petitioner being allowed to exercise his first amendment rights as they have no right to abuse the court system by stifling the use of sample ballots when they have used sample ballots themselves and 4) the public

13

interest is served by the voting rights of African Americans being respected throw allowing the voice of a leader in the African American community to be heard using the same medium, sample ballots, that the white democrats who are opposing his voice have used.

## Conclusion

For the above mentioned reasons, justice is best served by this Honorable Court granting a temporary restraining order against the prosecution of M. LaTroy Williams for actions resulting from the distribution of sample ballots with his trademark.

Respectfully Submitted

M. LaTroy Williams
3250 Commercial Pkwy
Memphis, TN 38116
901-502-4954

## Certificate Of Service

The undersigned hereby certifies that on December 16, 2020, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

_____
M. LaTroy Williams

14