In the United States District Court for Western District of Tennessee
Western Division

| | |
|---|---|
| **M. La-Troy ALEXANDRIA-WILLIAMS,** | |
| v. | No. 2:20-cv-02715-MSN-atc |
| | **Judge Mark Norris** |
| **Mark GOINS,** in his official capacity as Coordinator of Tennessee Elections | |
| **Mary MANCINI,** in her official capacity as Chairwoman of the Tennessee Democratic Party | |
| **Linda PHILLIPS,** Shelby County Election Commissioner, | |
| *Defendants.* | |

## Response to Defendant Goins's Motion to Dismiss

Comes now the Plaintiff, M. La-Troy Alexandria-Williams, by and through counsel, and files this Response To Defendant Goins's Motion To Dismiss. This Response is supported by Plaintiff's Affidavit and memorandum of law. In support of this Response Plaintiff avers as follows:

  1. Plaintiff will be filing a Motion To Amend his Complaint adding additional defendants and plaintiffs which will clarify some of the issues in this case.

  2. Plaintiff, in the caption of his complaint, asked for injunctive and declaratory relief against Defendants.

3. Defendant Mark Goins, in his position as Coordinator of Tennessee Elections, is a state actor under 42 U.S.C. § 1983 and therefore cannot avail himself of sovereign immunity.

4. The matter of Defendants taking Plaintiff off of the 2018 ballot was first brought before Shelby County Chancellor Walter Evans. (See Exhibit 1: Appeals Court Order, pg 1).

5. Chancellor Evans initially gave Findings of Fact And Law that Plaintiff's name should immediately be placed back on the ballot. (See Exhibit 1: Appeals Court Order, pg 1).

6. Defendants appealed that injunction on the basis that the findings of fact and law did not comply with Rule 65 of the Tennessee Rules Of Civil Procedure. (Exhibit 1 : Appeals Court Order).

7. On remand, Chancellor Evans issued a more detailed Findings of Fact and Law (Exhibit 2: July 12, 2018 Findings of Fact and Law), which stated in part: "Tennessee Code Annotated Section 2-13-203 does not apply to Petitioner's bid to run for U.S. Congress because he is running for one (1) of the four (4) offices listed in Tennessee Code Annotated Section 2-13-202. (Exhibit 2 : paragraph 13).

8. The Tennessee Democratic Party's own bylaws recognize that it lacks the powers to establish any procedures for selecting a Party nominee for U.S. Congress  Article III, Section 2(b) of the bylaws provides that "the powers and responsibilities of the Executive Committee include (b) Establishing the procedure for selecting Party nominees for the offices for which the procedure is not established by statute (see T.C.A. §§ 2-13-202, 203)." (Exhibit 2: paragraph 14)

9. Because the procedure for nominating candidates for U.S. Congress is established by statute, the Tennessee Democratic Party lacks the powers and responsibilities to establish any

procedure for selecting its nominee, as the nominee is selected through the primary election process. (Exhibit 2: paragraph 15).

10. The Shelby County Election Commission notified Petitioner that Petitioner's nominating petitions were properly filed, and that Petitioner's name would appear on the primary ballot.

11. The Tennessee Democratic Party notified Petitioner that it deemed him disqualified to run as a candidate for the Democratic party in the August primary election for a member of the U.S. Congress, and demanded that the Shelby County Election Commission remove Petitioner's name from the ballot. (Ex 2; para 17).

12. The Shelby County Election Commission removed Petitioner's name from the ballot. (Ex 2; para 18)

13. The Tennessee Democratic Party relied upon Tennessee Code Annotated Section 2-13-104, which provides: All candidates for state executive committee membership and for membership in the general assembly shall be *bona fide* members of the political party whose election they seek, A party may rule that candidates for its nominations be *bona fide* members of the party. Tenn. Code Ann. § 2-13-104.  (Ex 2; para 19)

14. Tennessee Code Annotated Section 2-13-104 has no application to candidates seeking election to U.S. Congress because the party is not making "its nominations" for that office but instead, by statute, the candidates are nominated through the primary election.  (Ex 2; para 20)

15. The bylaws of the Tennessee Democratic Party provide in pertinent part:

To the maximum extent allowed by law, the Tennessee Democratic Executive Committee shall insure that Party nominees for elected offices are bona fide Democrats. In the event that a county party, in compliance with its Bylaws, challenges a candidate for any office be it local, county, state or federal, against appearing on the ballot as a Democrat for failing to vote in at least three of the immediate prior five Democratic primaries, the challenge shall be referred to the County Party Development Committee which shall by a simple majority vote of the members make a recommendation to the State Party Chair. The Chair shall decide whether or not the candidate may appear on the ballot as a Democrat. The county party or the candidate has the right to appeal the Chair's decision to the full Executive Committee which may overturn the Chair's decision by a two-thirds vote of those present. The county party, Party Chair or the Executive Committee shall have the right to waive the foregoing prohibition against a candidate appearing on a ballot as a Democrat for good cause and when justice so requires. (Ex 2; para 21).

16.     Thus, even in the event that the Tennessee Democratic Executive Committee was entitled to determine whether Petitioner is a *bona fide* Democrat, the only lawful basis on which it could legally deny Petitioner is a *bona fide* Democrat is if Petitioner failed to vote in at least three (3) of the immediate prior five (5) Democratic primaries, at which point the challenge shall be referred to the County Party Development Committee. (Ex 2; para 22).

17.     The Bylaws of the Tennessee Democratic Committee do not contain any other rules by which it could disqualify Petitioner or challenge his standing as a *bona fide* Democrat. (Ex 2; para 23).

18.     Petitioner asserts that he is a Democrat. (Ex 2; para 24).

19. *"There are no facts or law supporting the Shelby County Election Commission's decision to omit Petitioner's name from the ballot, or the Tennessee Democratic Party's demand that it do so."* (emphasis added) (Ex 2; para 25).

20. Defendant Mark Goins was under court order by the Tennessee Court of Appeals to put the Plaintiff back on the ballot but actively refused to obey that court order.

21. Defendant Mark Goins falsely claimed he did not have time to get Plaintiff's name back on the ballot, but evidence shows that he put seven (7) addresses back on the ballot after being required to do so by a court order during that same time frame.

22. Co-conspirators of Defendant Mark Goins coerced and possibly bribed Plaintiff's former attorneys to voluntarily dismiss the case that gave rise to the Tennessee Court of Appeals order against the wishes of Plaintiff.

23. Co-defendant Mary Mancini illegally dissolved the Shelby County Democratic Executive Committee. Plaintiff was a member of the Shelby County Democratic Executive Committee, which at that time was majority black. Co-defendant Mancini replaced it with a majority white executive committee.

24. Co-conspirators tried to pass a bill to prevent the former members of the Shelby County Executive Committee from running for their seats again.

25. Defendant Mark Goins's lawyer said in open court that Goins did not have a dog in the fight, but the judge in that case stated that those dogs keep barking.

26. Lawyer for co-Defendant Mary Mancini stated in open court that the reason they wanted Plaintiff off the ballot was that it would cost Steve Cohen and the Democratic Party too much money to run against Plaintiff.

27. The Democratic Primary Board voted 3-0 to place Plaintiff back on the ballot, but Defendant Goins still refused to comply.

28. Norma Lester, at all times relevant to this matter, was chair of the Shelby County Democratic Women's Organization.

29. Lexi Carter, at all times relevant to this matter, was on the Shelby County Democratic Primary Board and the Shelby County Federal Election Commission.

30. Both Lexi Carter and Normal Lester determined, after doing their own investigations, that Plaintiff was a *bona fide* Democrat based on his only voting in Democratic Primaries and his only donating to democratic candidates.

31. The current chairman of the Tennessee Democratic Party stated in an open meeting that the reason he initially took Plaintiff off the ballot is that co-Defendant Mancini and other co-Defendants, who will be added in the Plaintiff's forthcoming motion to amend his complaint, mislead him about Plaintiff and then voted to put Plaintiff back on the ballot.

32. Co-Defendant Mary Mancini illegally removed future co-Plaintiffs Marion Alexandria-Williams Jr. and Marinda Alexandria-Williams from their four year term elected seats on the Tennessee Democratic Party State Primary Board / Executive Committee which is a statutory position.

33. In another related case, a judge affiliated with unnamed co-Defendant Steve Cohen laughed in open court at the fact that Plaintiff was not on the ballot and said that meant Steve Cohen would have no competition.

34. Plaintiff's congressional district is overwhelmingly black.

35. Unnamed co-defendant Steve Cohen, who is white, has maintained his congressional seat by actively diluting black political strength.

36. Unnamed co-defendant Steve Cohen has displayed a racist and patronizing attitude towards blacks, especially black Christians, going back to a 2007 National Public Radio interview where he dismissed concerns by African American pastors regarding how hate crimes laws he proposed might affect their first amendment rights as their simply being against him because he is white. (See "In Memphis, Debate over a White Representative" npr.org/templates/story.php?storyId=14810455).

37. Co-defendant Mary Mancini and unnamed co-defendant Steve Cohen were also instrumental in removing John DeBerry, who is also black, from the Democratic Primary Ballot for the state legislature.

38. Plaintiff has a witness who is willing to testify that she was paid by unnamed co-defendant Steve Cohen to try to entrap Plaintiff into sexual harassment.

39. In 2020, despite the clear ruling by Chancellor Evans that Plaintiff under the circumstances in 2018 should have been put on the ballot, Defendants removed Plaintiff using the same wrong application of the law to the facts.

Wherefore Plaintiff prays the honorable Court deny Defendant Goins's Motion To Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, and rule that this Court does have subject matter jurisdiction and that the Plaintiff has stated a claim upon which relief can be granted.

Dated: May 5, 2021

Respectfully submitted,

/s/ John Tennyson
John Tennyson (BPR No. 32777)
P.O. Box 1166
Mount Juliet, TN 37121
(615) 506-3108
john@patriotlaw.co

*Attorney for M. La-Troy Alexandria-Williams*

### Certificate of Service

I certify that on the 7 day of May, 2021, a true and correct copy of the foregoing has been served upon all parties of interest in this matter via operation of this Court's CM/ECF filing system.

/s/ John Tennyson
John Tennyson